IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JANICE BLUMENSTEIN,<br><br>Defendant. | Case No. 20-cr-00009-DKW-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Approximately 18 months into her 65-month sentence, Defendant Janice Blumenstein asks the Court to reduce her sentence to time served because her age and medical conditions, in light of the COVID-19 pandemic, present extraordinary and compelling reasons warranting such a reduction. The Court disagrees, and, for the reasons set forth below, her motion is DENIED.

## RELEVANT BACKGROUND

On February 21, 2020, Blumenstein pled guilty to a methamphetamine distribution-related offense. Dkt. No. 45. On July 29, 2020, the Court sentenced Blumenstein to 65 months' imprisonment and three years of supervised release. Dkt. Nos. 61, 62. The Court departed downward from the 87 to 108 months' sentencing guideline range because of Blumenstein's assistance to the government and pre-sentence rehabilitation. Dkt. No. 63 at 2–3.

On March 9, 2021, Blumenstein filed a pro se motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("compassionate release motion").  Dkt. No. 64.  After being appointed to represent her, the Federal Public Defender's Office filed a supplemental brief in support of Blumenstein's compassionate release motion on April 5, 2021.  Dkt. No. 71.  Blumenstein argues her age (52 years old)[1] and medical conditions—overweight/obesity, hypothyroidism, and a prior COVID-19 infection—in light of the COVID-19 pandemic, present extraordinary and compelling reasons warranting her immediate release.  Dkt. No. 71 at 8–13.  On April 7, 2021, the Government filed a response opposing any sentence reduction, Dkt. No. 74, to which Blumenstein replied on April 23, 2021, Dkt. No. 77.  This order follows.

## LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."  *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)).  Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal

---

[1]It appears that during the course of Blumenstein's compassionate release efforts, first through the Bureau of Prisons and then this Court, her birthdate passed.  For this reason, some of Blumenstein's briefs and exhibits list her age as 51 years old.  *See* Dkt. No. 71 at 8.  She is, in fact, 52 years old.  *See* Dkt. No. 57 at 2 (Blumenstein was born on March 11, 1969).

Procedure." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i). A court may "modify a term of imprisonment" upon an inmate's motion if:

1. the inmate exhausted "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on her behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction"; and

3. the court considers the sentencing factors set forth in 18 U.S.C. §3553(a).

18 U.S.C. § 3582(c)(1)(A)(i).  The inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance.  *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## DISCUSSION

The parties dispute only the second and third requirements detailed above. *See* Dkt. No. 74 at 4 ("The government acknowledges that defendant has properly exhausted her administrative remedies.").  Blumenstein argues that her age (52 years old), weight, hypothyroidism, and prior bout of COVID-19 present extraordinary

and compelling reasons warranting release.  Dkt. No. 71 at 8–13.  The Government disagrees, arguing that Blumenstein's age and medical conditions put her, at most, at only a minimally increased risk of having a severe reaction to COVID-19, and the low number of COVID-19 infections at her facility put Blumenstein at a low risk of even contracting the disease.  Dkt. No. 74 at 4–7.  Moreover, the Government argues, the goals of sentencing would not be served if Blumenstein was released after serving only approximately 27 percent of her sentence.  *Id.* at 8.[2]  The Court agrees with the Government, and, for the reasons explained below, Blumenstein's compassionate release motion is DENIED.

## I.  __Extraordinary and Compelling Reasons__

Section 3582(c)(1)(A)(i) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons."  While Congress did not define "extraordinary and compelling reasons" warranting compassionate release, the Sentencing Commission has.  *See* U.S.S.G. § 1B1.13.  However, that definition is binding only as to compassionate release motions brought by the Director of the Bureau of Prisons, not where, as here, such motions are brought directly by a defendant.  *United States v. Aruda*, -- F.3d --,  2021 WL 1307884, at *3–*4 (9th Cir. Apr. 8, 2021).  While the Sentencing Commission's statements in U.S.S.G. § 1B1.13 are not *binding*, they nonetheless "may inform a district court's discretion

---

[2]Blumenstein was arrested and has been detained since November 7, 2019.  *See* Dkt. No. 57 at 1.

for [Section] 3582(c)(1)(A) motions filed by a defendant." *Aruda*, 2021 WL 1307884, at *4.  In other words, the Court may still consider the Commission's statements on what constitutes an extraordinary and compelling reason warranting release, where such relief is sought directly by a defendant.  *See id.*

In the context of COVID-19-related compassionate release motions brought by defendants, district courts often consider the same criteria to determine whether a defendant has presented an extraordinary and compelling reason warranting release: "courts have looked to the safety of the defendant's current detention institution compared to release, as well as whether the defendant's medical conditions elevate the risk of severe illness from COVID-19." *United States of America v. Marshall*, 2021 WL 1535332, at *2 (D. Nev. Apr. 19, 2021) (citations omitted); *accord United States v. Kauwe*, 467 F. Supp. 3d 940, 946 (D. Nev. 2020) (considering whether: "(1) the combination of [the defendant's] age and underlying health conditions elevate his risk of becoming seriously ill were he to contract COVID-19 . . . and (2) he faces greater risk from COVID-19 if he continues to be housed at his current facility instead of being released"); *United States v. Williams*, 2020 WL 4586860 at *3 (D. Haw. Aug. 10, 2020) (denying compassionate release because the defendant failed to demonstrate a large number of past or present infections at the facility); *United States v. Kim*, 2020 WL 3213312, at *3 (D. Haw.

June 15, 2020) (denying compassionate release because the "court cannot tell that there is a substantial risk that [the defendant] will be reinfected").

The Court recognizes that Blumenstein is 52 years old, is overweight (possibly obese) and suffers complications from thyroid disease.  Dkt. No. 57 at 2 (showing Blumenstein was born March 11, 1969); Dkt. No. 76 at 21–22, 190 (listing Blumenstein's BMI as 29.8 based on a height of 63 inches and weight of 171 pounds on October 21, 2020); Dkt. No. 77 at 5 (Blumenstein reporting her current weight is 176.4 pounds, giving her a BMI of 31.2); Dkt. No. 76 at 2 (showing Blumenstein's hypothyroidism is current as of March 2021). Nonetheless, at 52, Blumenstein is hardly in the most at-risk age-group.[3] Moreover, even assuming Blumenstein is slightly obese, the CDC only recognizes that obesity "*can* make [one] more likely" to have a severe reaction to COVID-19, not that it will.[4]  Finally, thyroid disease is not listed by the CDC as placing one at a greater risk of severe illness from COVID-19.[5]  In short, Blumenstein offers far

---

[3]*People at Increased Risk: Older Adults*, CDC (last updated Apr. 16, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Apr. 26, 2021).

[4]*People at Increased Risk: People with Certain Medical Conditions*, CDC (last updated Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 26, 2021)(emphasis added).

[5]*People at Increased Risk: People with Certain Medical Conditions*, CDC (last updated Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 26, 2021).

from compelling evidence that her age and medical conditions put her at a significant risk of a severe reaction to COVID-19.

Even assuming it were compelling, to present an extraordinary and compelling reason warranting release due to COVID-19, this Court—and others[6]— require that a defendant also show that there is "a high risk of contracting the virus because of the number of positive COVID-19 cases at the facility where [the defendant] is housed." *See, e.g.*, *United States v. Rodrigues*, No. 16-CR-00529-DKW, 2020 WL 5351029, *5 (D. Haw. Sept. 4, 2020). Blumenstein cannot make this showing. As of this order, the Bureau of Prisons ("BOP") is reporting *zero* inmates and seven staff at FCI Pekin, where Blumenstein is housed, as currently infected with COVID-19.[7] While these numbers may not be precise, they provide strong evidence that the chance of Blumenstein contracting the virus *at this time* is anything but significant. This conclusion is bolstered by the BOP's efforts to vaccinate both staff and inmates in all BOP facilities.[8]

While the Court is not bound by the Sentencing Commission's definition of extraordinary and compelling reasons warranting compassionate release in this case, it finds that definition informative. Particularly in light of a motion for

---

[6]*See, e.g.*, *United States v. Williams*, 2020 WL 4586860, at *3 (D. Haw. Aug. 10, 2020).
[7]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Apr. 27, 2021).
[8]As of this order, BOP reports that 122 staff members and 355 inmates at FCI Pekin have received the vaccine. *COVID-19 Coronavirus: COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/ (last visited Apr. 27, 2021).

compassionate release based on an illness, the Court finds it important to consider the effect that illness can be expected to have on the inmate and whether the inmate can be expected to fully recover. *See* U.S.S.G. § 1B1.13 n.1(A) (requiring an inmate to show that, due to an illness, his ability "to provide self-care within the . . . correctional facility" is or will be "substantially diminishe[d]" and that he cannot be expected to recover).

FCI Pekin has had no COVID-19-related deaths.[9] More significantly, the evidence before the Court indicates Blumenstein has contracted and fully recovered from COVID-19. *See* Dkt. No. 64-3 at 14 (explaining Blumenstein caught COVID-19 in December 2020); Dkt. No. 76 at 16, 236. As Blumenstein acknowledges, Dkt. No. 71 at 12–13, while there is still much to study, the CDC has advised that reinfections of COVID-19 are rare.[10] And given her full recovery the first time she was infected, the Court has no evidence before it to suggest that Blumenstein would not fully recover again should she be among those rarely reinfected.

In sum, where an inmate is seeking compassionate release due to a potential reaction to a communicable disease, such as COVID-19, she must usually

---

[9]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Apr. 23, 2021).
[10]*Reinfection with COVID-19*, CDC (last updated Oct. 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Apr. 23, 2021).

demonstrate that the potential to be infected is high, she is at risk of a severe reaction if infected, and should she become infected, she will suffer significant short- or long-term harm or death. Because the remedy sought—years off a sentence for a felony conviction—is extraordinary, the circumstances warranting that remedy must be likewise extraordinary (and compelling). Blumenstein does not come close. The crux of her argument for release rests on boundless speculation that fails to wrestle with the facts—including that her facility is virtually COVID-free, she has already recovered from the disease, with little, if any, evident discomfort, she is unlikely to become reinfected, and vaccines are being administered to lower the risk to all.

Because Blumenstein has failed to demonstrate an extraordinary and compelling reason warranting compassionate release, her motion is DENIED.

## II.    <u>Section 3553(a) Factors & Risk of Danger to the Community</u>

Even if Blumenstein presented an extraordinary and compelling reason warranting a sentence reduction, the Court must consider any such reduction in light of the sentencing factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). Blumenstein argues that, in addition to the COVID-19 pandemic, several factors weigh in favor of release: (1) "Blumenstein was not a leader and she did nothing to impede or obstruct justice in this matter"; (2) "Blumenstein has completed a number of rehabilitative programs"; (3) the Court's ability to impose

supervised release mitigates the risk of releasing her; and (4) she is housed at a minimum-security satellite camp.  Dkt. No. 71 at 18–20.

None of these are persuasive.  The Court considered Blumenstein's role and cooperation, as well as the Court's ability to impose supervised release in lieu of imprisonment, when it initially sentenced her.  Further, the Court imposed a below-guidelines sentence, in part, because of her willingness to engage in pre-sentence rehabilitative programming.  Dkt. No. 63 at 3.  To consider these same factors again to reduce Defendant's term of imprisonment to nothing amounts to double-counting.  While the Court is encouraged that Blumenstein has continued to engage in BOP programming after sentencing, completing a modest amount of prison programming over the course of less than a year is not compelling evidence of rehabilitation warranting the magnitude of the reduction requested.  Moreover, that the BOP has chosen to place Blumenstein in a minimum-security camp is not particularly relevant to the Court's evaluation of the appropriateness of Blumenstein's sentence in light of the Section 3553(a) factors and the "extraordinary and compelling" reason proffered.

Thus, even if the Court found Blumenstein's circumstances presented an extraordinary and compelling reason warranting compassionate release, it would find such release unwarranted in light of the Section 3553(a) sentencing factors.

## <u>CONCLUSION</u>

For the reasons set forth herein, Blumenstein's motion for compassionate release, Dkt. No. 64, is DENIED.

IT IS SO ORDERED.

DATED: April 27, 2021 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

_United States v. Janice Blumenstein_, Criminal No. 20-00009-DKW-1, **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE.**